**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PETER GALLERSTEIN, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 05-05661 (JAG) |
| BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA, et al., | : **OPINION** |
| Defendants. | : |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion to dismiss the Complaint for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6), by Defendants Berkshire Life Insurance Company of America ("Berkshire") and its parent company, Guardian Life Insurance Company of America ("Guardian") (collectively, "Defendants"). For the reasons set forth below, Defendants' motion to dismiss will be denied.

### BACKGROUND

Peter Gallerstein ("Plaintiff"), a New Jersey doctor, has been a practicing physician specializing in cardiology since 1975. (Compl. ¶ 34.) Until March 10, 2000, Plaintiff's sole employment was as a cardiologist at Morristown Cardiology Associates, P.A. ("Morristown"). (Id. at ¶ 37.) Plaintiff alleges that he has suffered from ulcerative colitis since August, 1992. (Id. at ¶¶ 35, 36.)

1

Plaintiff purchased two disability income insurance policies (G-452924, G-451480) from Berkshire. (Compl. ¶¶ 13, 16.) Plaintiff also purchased two disability income insurance policies (G-601882, G-617393) from Guardian. (Compl. ¶¶ 20, 22.) Attached to the Complaint are copies of the applications filed for the two Guardian policies, which show that Plaintiff lived in New York at the time of their purchase. (Compl. Ex. A, B.) The Complaint alleges that, at all relevant times, Plaintiff practiced cardiology in Morristown, New Jersey. (Compl. ¶ 4.)

Plaintiff claims that on or about May, 1999, he became unable to perform some of the duties of his regular occupation as a result of a deterioration in his health. (Compl. ¶¶ 1, 36.) Plaintiff alleges that, as a result of his ulcerative colitis, he was unable to take night calls or weekend calls for several months at Morristown. (Id. at ¶ 37.) Plaintiff further alleges that, as a result of the restrictions placed on him by his condition, he was compelled to leave his private practice on March 10, 2000. (Id. at ¶ 38.) After his departure from private practice, Plaintiff took a position as Director of the Corporate Medical Clinic at Honeywell ("Honeywell") where he has performed industrial medical work and administrative work for 40-45 hours per week with no night or weekend call. (Id.) Plaintiff's income declined from $33,500 per month at the Morristown practice to approximately $18,000 per month at Honeywell. (Id.)

Plaintiff alleges that he pursued a lengthy and unsuccessful battle with Berkshire to obtain benefits under his disability income insurance policies. Berkshire issued a final letter denying him benefits on January 9, 2004. (See Compl. ¶¶ 42-75.) On December 2, 2005, Plaintiff filed a Complaint alleging four counts against Defendants: 1) breach of contract; 2) unfair trade practices and bad faith; 3) intentional misrepresentation; and 4) breach of fiduciary duty.

The parties briefed this motion to dismiss under New Jersey law. When this Court

2

reviewed the record and found that two policies were alleged to have been purchased in New York, a supplementary briefing on choice of law was ordered.

## ANALYSIS

### I. Governing Legal Standards

#### A. Standard for a Rule 12(b)(6) Motion to Dismiss

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See Morse v. Lower Merion School District, 132 F.3d 902, 906 n.8 (3d Cir. 1997). All reasonable inferences, however, must be drawn in the plaintiff's favor. See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). Moreover, the claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to

3

be drawn that the elements exist. See FED. R. CIV. P. 8(a)(2); Conley, 355 U.S. at 45-46. "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

The Supreme Court has characterized dismissal with prejudice as a "harsh remedy." New York v. Hill, 528 U.S. 110, 118 (2000). Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile. "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

B.   Choice of Law

A federal district court sitting in diversity must apply the choice of law principles of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). The New Jersey Supreme Court has established these choice of law rules:

> [T]he determinative law is that of the state with the greatest interest in governing the particular issue. The first step in the analysis is to determine whether a conflict exists between the law of the interested states. Any such conflict is to be determined on an issue-by-issue basis. If an actual conflict exists, the next step is to identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties. If that state's contacts are not related to the policies underlying its law, then that state does not possess an interest in having its law apply. Consequently, the qualitative, not the quantitative, nature of a state's contacts ultimately determines whether its law should apply.

Vezey v. Doremus, 510 A.2d 1187, 1189 (N.J. 1986).

Under New Jersey law, the governing law in a contract case is that of the jurisdiction with the most significant relationship and closest contacts with the transaction and the parties. State Farm Mut. Auto. Ins. Co. v. Estate of Simmons, 417 A.2d 488, 491 (N.J. 1980). "The law of the

4

state that the parties understood was to be the principal location of the insured risk governs unless some other state has a more significant relationship to the transaction and the parties." Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co., 629 A.2d 885, 894. (N.J. 1993).

## II.   Defendant's 12(b)(6) Motion to Dismiss

In addressing the motion to dismiss, this Court must, for each issue, perform a choice of law analysis. With the exception of the actual purchase transaction for two of the policies, all events in the Complaint are alleged to have occurred in the state of New Jersey. Plaintiff argues persuasively that, since Plaintiff worked and resided in New Jersey throughout his entire dispute with Defendants, beginning before the time of the onset of the illness, New Jersey has the most significant interest in every issue in this case except for those involved in the purchase transactions. Moreover, neither party contends that choosing New York rather than New Jersey law determines the outcome of this motion to dismiss. All issues involving events subsequent to purchase will be decided under New Jersey law. As will be discussed further below, because there is no actual conflict between the law of fraud of New York and New Jersey, for the purposes of this motion, the validity of the claim of fraud in the purchase transaction will be decided under New Jersey law as well.

### A.   Count IV : Breach of Fiduciary Duty

Plaintiff alleges breach of fiduciary duty in his Complaint. Plaintiff and Defendant dispute whether New Jersey law imposes a fiduciary duty upon insurers. Defendants contend that, under New Jersey law, an "insurer simply does not owe a fiduciary duty to its insured when it is rendering a claim determination." (Defs.' Br. 8.) This is incorrect.

New Jersey has broadly recognized an insurer's fiduciary duty insofar that an insurer

5

owes a duty of good faith to the insured. See Rova Farms Resort, Inc. v. Investors Ins. Co., 323 A.2d 495, 505 (N.J. 1974). Defendants argue for an unreasonably narrow reading of Rova Farms in particular and New Jersey law in general. In Rova, however, the New Jersey Supreme Court addressed the duties of insurers to their insureds in unmistakeably broad terms: "Good faith is a broad concept . . . [which] imposes upon the insurer the duty to exercise good faith in settling claims." Id.

Subsequent decisions of the New Jersey Supreme Court continue to reflect this broad approach to the fiduciary obligations of insurers to their insureds. "An insurance company owes a duty of good faith to its insured in processing a first-party claim." Pickett v. Lloyd, 621 A.2d 445, 450 (N.J. 1993). In Pickett, the Court cited a state appellate decision, Sobotor v. Prudential Property & Casualty Ins. Co., 200 N.J.Super. 333, 337-41 (N.J. Super. Ct. App. Div. 1984), for the proposition that the "relationship of insured and insurer, either agent or broker, is [a] fiduciary one, carrying with it affirmative duties toward the insured." See also Griggs v. Bertram, 88 N.J. 347, 361 (N.J. 1982) (noting "the overriding fiduciary duty of an insurer to deal with an insured fairly and candidly"). Clearly, New Jersey law recognizes an insurer's fiduciary duty to its insured in settling claims.

The Supreme Court discussed the concept of fiduciary duties in Pegram v. Herdrich, 530 U.S. 211, 231 (2000): "At common law, fiduciary duties characteristically attach to decisions about managing assets and distributing property to beneficiaries. . . . Thus, the common law trustee's most defining concern historically has been the payment of money in the interest of the beneficiary." An insurer paying a disability claim is paying money in the interest of a beneficiary and thus also reflects this defining characteristic. Moreover, the Court quoted from Justice

6

Cardozo's famous formulation in Meinhard v. Salmon: "A trustee is held to something stricter than the morals of the market place." Pegram, 530 U.S. at 225 (quoting Meinhard v. Salmon, 249 N.Y. 458, 464 (1928)).

As will be discussed in the next section, New Jersey has codified the stricter obligations of an insurer to its insured in settling claims in N.J. Stat. Ann. § 17:29 B-4(9)(f). This statute by itself contradicts the assertion that, as a matter of law, New Jersey imposes no fiduciary duties on an insurer settling claims. Defendants' motion to dismiss Plaintiff's claim for breach of fiduciary duty, pursuant to FED. R. CIV. P. 12(b)(6), is denied.

B.  Count II : Bad Faith

Plaintiff alleges bad faith on the part of Defendants in refusing to pay him benefits as a part of Count II, for violation of N.J. Stat. Ann. § 17:29 B-4. This statute defines unfair acts, practices, and methods of competition in the business of insurance. N.J. Stat. Ann. § 17:29B-4. N.J. Stat. Ann. § 17:29 B-4(9) addresses unfair claim settlement practices. N.J. Stat. Ann. § 17:29 B-4(9)(f) states a good faith requirement for insurers: "Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims in which liability has become reasonably clear" constitutes an unfair claim settlement practice. Id.

In New Jersey, an insurer cannot be liable as a matter of law for denying a claim in bad faith if the basis for that denial is "fairly debatable." Pickett, 621 A.2d at 450. Application of the "fairly debatable" standard requires an intensive factual examination. Defendants agree that there are factual questions about the correctness of their claim determination. (Defs.' Reply Br. 9.) Yet they use this to argue that, if there are factual questions, then the denial is necessarily "fairly debatable" and the bad faith claim must be dismissed. This is illogical and, if accepted,

7

would require that plaintiffs prove their bad faith claims conclusively in their complaints, an outcome at odds with our legal system's differentiation of pleading and proof. In a case of this factual complexity, at a stage at which all reasonable inferences must be made in Plaintiff's favor, this Court cannot conclude that it appears beyond doubt that Plaintiff would be wholly unable to prove any bad faith at any time. Thus, this Court denies Defendants' motion to dismiss Plaintiff's claim of bad faith, pursuant to FED. R. CIV. P. 12(b)(6).

    C.    Count III : Intentional Misrepresentation

Plaintiff alleges fraud and intentional misrepresentation at the time of purchase, as well as subsequently, by Defendants. New York and New Jersey provide for the same five essential elements in determining common law fraud. See Winslow v. Corporate Express, Inc., 834 A.2d 1037, 1044 (N.J. Super. Ct. App. Div. 2003); Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999). There is no actual conflict in the two states' laws of common law fraud.

FED. R. CIV. P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." "The purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which defendants are charged" in order to give them an opportunity to respond meaningfully to the complaint, "and to prevent false or unsubstantiated charges." Rolo v. City of Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (citing Seville Indust. Machinery v. Southmost Machinery, 742 F.2d 786, 791 (3d Cir. 1984)).

To satisfy Rule 9(b), a plaintiff must "plead with particularity the 'circumstances' of the

8

alleged fraud." Rolo, 155 F.3d at 658. Plaintiffs need not "plead the 'date, place or time' of the fraud, so long as they use an 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" Rolo, 155 F.3d at 658 (citing Seville, 742 F.2d at 791). The Third Circuit has cautioned that courts should "apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." Rolo, 155 F.3d at 658 (citing Christidis v. First Pa. Mortg. Trust, 717 F.2d 96, 99 (3d Cir. 1983)).

In New Jersey, a cause of action for common-law fraud has five elements: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. Winslow, 834 A.2d at 1044. The Complaint alleges: (1) that Defendants misrepresented that they would make benefit payments as per the policy; (2) that Defendants never intended to make these payments; (3) that Defendants intended for Plaintiff to rely on these misrepresentations; (4) that Plaintiff reasonably relied on the misrepresentations, as evidenced by Plaintiff's continuing payment of premiums; and (5) that Plaintiff suffered pecuniary loss consisting of the loss of monthly benefits, attorney's fees, litigation costs, expenses, interests and earnings upon the unpaid benefits. (Compl. ¶¶ 100-02, 105).

Defendants argue that Plaintiff has failed to plead the first element, a material misrepresentation of a presently existing or past fact. The Complaint alleges that Defendants misrepresented their lack of intent to perform under the contract. (Compl. ¶ 99-100.) Defendants contend that New Jersey law does not permit fraud claims to be premised on

9

misrepresentations as to future facts or events. In support, Defendants distort the holding of Anderson v. Modica, 4 N.J. 383, 391 (N.J. 1950), which expressly allows for fraud claims implicating future events if fraudulent scienter is alleged, that is, when the perpetrator is alleged to have misrepresented the present intent of future performance on a promise at the moment the promise is made. See also Lightning Lube v. Witco Corp., 4 F.3d 1153, 1186 (3d Cir. 1993) (citing Anderson for this point). Because Plaintiff alleges fraudulent intent at the time the contractual promises were made, this is sufficient to state a claim under Anderson.

Plaintiff's Complaint is sufficient to satisfy FED. R. CIV. P. 9(b). The Plaintiff provides sufficient information for the Defendants "to prepare a defense as to the particular allegations of fraud." Rolo, 155 F.3d at 659. Looking to the Complaint, Plaintiff specifies the dates that the four agreements were entered into and then notes the subsequent alleged failure to fulfill the terms of these agreements, all of which were in effect until January 3, 2005. (Compl. ¶ 99.) Moreover, after reading the Complaint, Defendants know that they must prepare to rebut Plaintiff's arguments that Defendants entered into the insurance agreements without any intention of ever fulfilling the policy's terms and that Defendants falsely represented that they would fulfill the terms of the policies. (Id. at ¶ 100.) The information set out by Plaintiff sufficiently satisfies the standard that a plaintiff "plead with particularity the 'circumstances' of the alleged fraud." Rolo, 155 F.3d at 658. Thus, Defendants' motion to dismiss, pursuant to FED. R. CIV. P. 9(b), is denied.

### D. Gist of the Action Doctrine

Defendants assert that Plaintiff's fraud (intentional misrepresentation) claim is barred because it is "nothing more than a breach of contract claim recast as a tort and thus, is subject to

the "gist of the action" doctrine under Pennsylvania law. (Defs.' Br. 14.) This Court need not consider this argument since Pennsylvania law has no application to this case. Not only does New Jersey not recognize the "gist of the action" doctrine, it has explicitly recognized that an action can sound in both contract and tort. "A wrongful failure to settle, wherein the insurer has breached the fiduciary obligation imposed by virtue of its policy, sounds in both tort and contract." Rova Farms, 323 A.2d at 51.

E.    Period of Limitations

Defendants have withdrawn this argument. (Defs.' Reply Br. 12.)

## CONCLUSION

For the reasons stated above, this Court denies Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6).

S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date:   September 11, 2006